John R. Heilmaet, J.
This is a proceeding in which the Dutchess County Department of Social Services, by petition dated September 3, 1971, seeks to obtain reimbursement from *365 the stepfather for moneys expended on behalf of a minor child placed in a State training school on March 23, 1971, after the child had been adjudicated by this court to be a person in need of supervision. The respondent moved to dismiss the petition on the ground that the respondent stepfather was not responsible for such support. Memoranda on behalf of the petitioner and respondent were submitted and have been considered by the court.
The petitioner contends that it is entitled to seek reimbursement from the stepfather, pursuant to the provisions of the Social Services Law and the Family Court Act. (Social Services Law, §§ 101, 2, subd. 20; 1110; Family Ct. Act, § 233.)
Section 101 of the Social Services Law, so far as it is applicable, provides as follows: “ The spouse or parent of a recipient of public assistance or care * * shall * * * be responsible for the support of such person * * *. Stepparents shall in like manner be responsible for the support of minor step-children. ”
The respondent contends that, as a stepparent, his obligation to support a stepchild is limited to circumstances where the child is, or is likely to become, a public charge. (See, also, Family Ct. Act, § 415.) Further, he contends that section 101 of the Social Services Law and section 415 of the Family Court Act are inapplicable, because involuntary incarceration by court order is not public assistance or care.
Neither the petitioner nor the court differs with the respondent’s contention with regard to the basic obligation of a stepparent. At common law a stepfather was under no obligation to support children of his wife by a former marriage. (Williams v. Hutchinson, 3 N. Y. 312 [1850]; People ex rel. Coleman v. Fermoile, 236 App. Div. 388 [4th Dept., 1932].) Since the obligation of a stepparent to support a stepchild is imposed by legislation (Social Services Law, § 101; Family Ct. Act, § 415; Matter of Mercer v. Mercer, 26 A D 2d 450 [1st Dept., 1966]), this legislation, which is in derogation of the common law, must be strictly construed. (Matter of Du Mond, 196 Misc. 14 [Children’s Ct., 1949]; People ex rel. Deming v. Williams, 161 Misc. 573, 577 [Supreme Ct., 1936].) Such statutes cannot be extended beyond their terms or enforced beyond the extent and manner therein prescribed. (“ Castellani ” v. “ Castellani ”, 176 Misc. 763 [Domestic Relations Ct., 1941], affd. 263 App. Div. 984 [1st Dept., 1942], mot. for lv. to app. den. 264 App. Div. 755 [1st Dept., 1942].)
There seems to be some conflict as to whether maintenance at a training school is public care and assistance. In Matter of *366 Brodme (10 A D 2d 414 [4th Dept., 1960], affd. without opn. 13 N Y 2d 734 [1963] and Matter of Tuttle (37 Mise 2d 91 [Surrogate’s Ct., 1962]), the respective courts did indicate that involuntary incarceration did not constitute public care and assistance in the traditional sense. However, the essence of each decision revolved around the authority of Surrogate’s Court to compel reimbursement for maintenance of a child placed in an institution by court order. It is interesting to note that in Brodme the court indicated that relief might properly be obtained elsewhere, namely pursuant to section 56-a of the Domestic Relations Court Act, the forerunner of section 235 of the Family Court Act.
Matter of Charles (181 Misc. 194 [Surrogate’s Ct., 1943]), also cited by respondent, and upon which the Brodme court relied, can also be distinguished, in that the reimbursement sought there was from the estate of an individual confined by reason of a criminal offense and not by reason of a civil commitment, as is the case here.
It is significant to note that less than one year prior to the Appellate Division decision in Brodme, the Court of Appeals, in a ease involving facts closely resembling those of the instant matter, specifically held that a stepparent is liable for the expenses incurred by the Department of Welfare in connection with the confinement of a delinquent stepchild. (Department of Welfare of City of N. T. v. Siebel, 6 NY2d 536 [1959].) There the court found that the maintenance of the respondent’s child at a school for delinquents was public care and assistance within the meaning of the applicable statutes. The decision in Siebel was favorably cited in a recent Court of Appeals decision dealing with the constitutionality of section 233 of the Family Court Act. (Matter of Jesmer v. Dundon, 29 N Y 2d 5, 8 [1971].) This would tend to .support this court’s reliance on the continued viability of one of the major premises of that decision, namely that dealing with the characterization of the detention in question as public care and assistance.
Section 110 of the Social Services Law, which was repealed, effective July 1, 1971, (now Executive Law, § 528) provided: “ 1. The court committing a child to any school for juvenile delinquents which is a state institution in the department shall ascertain the financial condition of his or her parents or other persons responsible for his or her .support and, if it shall be found that any such parent or other person is able to pay any part of the cost of maintenance of such child while in, or being maintained at the expense of such school, or a branch thereof, *367 the court shall make an order directing such parent or other person to make such payments as the court may decide to be fair and equitable
Section 528 of the Executive Law, which replaced section 110 of the Social Services Law, is basically identical to the latter section. The fundamental purpose for the former section remains unchanged, the new provisions being mandated by the establishment of' the Division for Youth and the transfer of jurisdiction over institutions from the Department of Social Services to the Division for Youth (Executive Law, § 510).
The respondent urges that the language of former section 110 of the Social Services Law, relating to “ school for juvenile delinquents ”, excludes persons in need of supervision. There does not appear to be any merit to this argument. Such schools have been designated and used for the placement of persons in need of supervision, and the term “ juvenile delinquents ” should not be construed, in this instance, as being exclusive of persons in need of supervision, but rather as distinguishing those schools from others used for persons over 16 years of age. (See Matter of “ Anonymous ” v. People, 20 A D 2d 395, 400 [1st Dept., 1964]; Matter of “ Anonymous ”, 40 Misc 2d 1058 [Family Ct., 1963].)
This brings us to the applicable provisions of the Family Court Act. Section 233 of the Family Court Act, which to a large degree parallels the provisions of former section 110 of the Social Services Law and section 528 of the Executive Law, in part, provides as follows:
“ (a) Whenever a child is detained, placed or committed under the provisions of this act to an authorized agency, or to any person other than his parent or other person legally chargeable with the expense of his maintenance, and is retained in accordance with the rules of the state board of social welfare, compensation for his care and maintenance shall be a charge on the county ”. The section goes on to say that such payments shall come from moneys appropriated for public relief.
“ (b) The court may, after issuance and service of an order to show cause upon the parent or other person having the duty under the law to support such child, adjudge that such parent or other person shall pay to the court such sum as will cover in whole or in part the support of such child ”.
The respondent urges that these provisions of the Family Court Act are inapplicable, since the institution in which the child in question was placed was not an authorized agency, and further, that the respondent, as a stepparent, is not one of those other persons legally chargeable with the expense of the main *368 tenance of Ms stepchild, or other person having a duty under the law to support the child, as required by .section 233 of the act.
As to the first argument, it has been held that Family Court has jurisdiction to place a girl in a State institution as a “ person in need of supervision ”. (Matter of “ Jane Doe ”, 36 Misc 2d 611 [Family Ct, 1962].) The Hudson Training School for Girls in which the child was placed was one of the institutions designated for placement by Family Court of persons in need of supervision. The legislative history of section 756, and former subdivision (d) thereof in particular, and the cases construing same, clearly indicate that institutions, such as the one in which the child in question was placed, are in fact ‘ ‘ authorized agencies ” within the meaning of the statute. (See notes to amendments McKinney’s Cons. Laws of N. Y., Book 29A, Family Ct. Act, § 756, 1972 Supplement; Matter of “Anonymous” v. People, supra; Matter of “Anonymous ”, supra.)
With regard to respondent’s second argument, relating to his duty to support a stepchild, the position which this court has taken with regard to section 101 of the Social Services Law would appear to be equally applicable in this instance. The entire problem presented by the instant case involves one of those many areas in which the provisions of the Social Services Law and the Family 'Court Act overlap, and in fact interact. (See Social Services Law, former § 110, subd. 2; Executive Law, § 528, .subd. 2.) This court does not believe that the provisions of either body of applicable law, or the decisions rendered thereunder, can be treated as islands unto themselves. Accordingly, tMs court finds that sections 101 and 110 (now Executive Law, § 528) of the Social Services Law and sections 233 and 415 of the Family Court Act, as the same have been construed by the applicable case law, impose a duty upon the respondent, as the stepparent of the child in question, to reimburse the Department of Social Services for the cost of maintaining his stepcMld during her placement at the State training school.
The only question remaining is whether this court lacks jurisdiction to grant the relief sought by reason of the fact that, as respondent contends, .such relief constitutes an unpermitted recoupment of moneys previously expended,
In support of the contention that Family Court may order support only at the time the assistance is rendered and not by way of recoupment or reimbursement, the respondent cites Matter of Hagadorn (11 Misc 2d 51 [Children’s Ct., 1958] ) and Schacht v. Schacht (58 N. Y. S. 2d 54 [Domestic Relations Ct., 1945]). Aside from the fact that each .of these decisions predates the enactment of the Family Court Act, this court does not *369 feel compelled to apply the holding in either case, in view of the distinguishing aspects of each. In Hagadorn the Commissioner of Welfare unsuccessfully sought to obtain an order compelling the respondent father to make payments in recoup-, ment of expenditures by the' County Welfare Commission in addition to amounts previously ordered, on a means ’ ’ basis. The basic premise of the court’s decision was that the then constituted Children’s Court was not a civil court for the purpose of enforcing reimbursement of moneys expended by the Welfare Commissioner. However, the provisions of section 233 of the Family Court Act and former section 110 of the Social Services Law both give Family Court clear authority to require payment to Social Services for commitment or placement of a child in an institution at public expense. There is no indication in either section that the application for relief must be made simultaneously with the adjudication or placement, or that failure to do so will result in a reduction of payment required, nor is there any indication that the relief relates to prospective expenditures only. Further, in Hagadorn there was a prior order, issued on the basis of respondent’s means, at the time of its issuance, which the Welfare Department then sought to retroactively modify on the basis of respondent’s current means. Here the situation is entirely different; there is no prior order and Social Services is seeking relief in the first instance. The holding in Hagadorn might be somewhat more persuasive if this court had previously ordered the respondent to pay a fixed amount and Social Services was now seeking an upward modification of the amount and to have such modification applied retroactively, as was the case in Hagadorn.
With regard to S'chacM, as the same is cited by respondent in support of his position here, the court held that Children’s Court was without jurisdiction to order support payments for past expenditures. There is no question that the Family Court, as now constituted, may grant relief by way of reimbursement for past expenditures. For example, in paternity proceedings this court has authority to require reimbursement by an adjudicated father for money expended by the mother prior to the filing of the petition. (Family Ct. Act, § 545.)
This court is unable to find any current statutory or decisional law which tends to support respondent’s position with regard to our lack of authority to grant the relief sought.
Accordingly, respondent’s motion to dismiss is denied, and this matter is set down for a hearing on December 21, 1972, at 2:00 p.m., to determine the means and ability of the respondent to pay support.