OPINION OF THE COURT
Helen E. Freedman, J.
The issue here is whether a plaintiff may continue an action in negligence after the defendant’s discharge in bankruptcy if the potential recovery is limited to liability insurance cover *39 age. Defendant Akim F. Czmus moves for leave to renew and reargue his prior motion to dismiss plaintiff Dominick Andriani’s complaint pursuant to CPLR 3211 (a) (5), on the ground that defendant’s liability has been discharged. Defendant’s motion was denied by the order of this court dated October 4, 1991 (the Prior Order). Additionally, plaintiff cross-moves to strike defendant’s answer for noncompliance with the disclosure provisions of the Prior Order and for sanctions.
The motion to renew and reargue is granted, and the court adheres to the Prior Order for the reasons set forth below.
FACTS
Plaintiff commenced his medical malpractice lawsuit in 1986. Thereafter, defendant filed for bankruptcy (under chapter 7 of the United States Bankruptcy Code [11 USC]) in the United States Bankruptcy Court, Central District of California (Mund, J.).[1] Upon filing, this case was automatically stayed pursuant to 11 USC § 362 (a).
On or about July 12, 1988, counsel for both parties executed a purported "Order Modifying Automatic Stay” (the Stay Modification), according to which the stay was to be lifted with respect to this action in exchange for plaintiff’s agreement to cede any claims to defendant’s property and to seek recovery only from defendant’s liability insurer, Medical Liability Insurance Company (MLMIC). However, the Stay Modification was never signed or ordered by Judge Mund or any other court, nor was it served on other claimants to defendant’s assets or the subject of any hearing.
On January 8, 1990, the Bankruptcy Court issued a "Discharge of Debtor(s)” (the Discharge) pursuant to which (1) defendant was released from "all dischargeable debts”, (2) "any judgment [thereafter] obtained in any court other than [the Bankruptcy Court was declared] null and void as a determination of the personal liability of [defendant] with respect to [the discharged debt]”, and (3) "all creditors whose debts [were] discharged by [the Discharge] * * * [were] enjoined from * * * continuing any action * * * to collect such debts as personal liabilities of [defendant]”.
Defendant thereafter moved to dismiss this action; as part of his opposition papers, plaintiff proffered a document (the Signed Order), dated September 13, 1991 and signed by Judge *40 Mund, which apparently is otherwise identical to the Stay Modification.
DEFENDANT’S MOTION TO DISMISS
Determination of the motion involves the application and interpretation of the United States Bankruptcy Code and New York Insurance Law.[2] The court notes preliminarily that, subject to certain statutory exceptions inapplicable here, it has the power to interpret the effect of the Bankruptcy Code generally, and a discharge in bankruptcy specifically, on a pending claim over which it has jurisdiction. (See, Chevron Oil Co. v Dobie, 40 NY2d 712, 714-715 [1976]; Vleming v Chrysler Corp., 90 AD2d 773, 774 [2d Dept 1982].)
There can be no dispute that, as a result of defendant’s discharge, plaintiff is permanently enjoined from proceeding against defendant’s personal assets.[3] However, 11 USC § 524 (e) provides that, except in circumstances inapplicable here, the "discharge of a debt of [a] debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.” Clearly, a liability insurer like MLMIC is a liable "entity” with respect to the covered debts of the insured. Therefore, under section 524 (e), MLMIC’s contingent liability for defendant’s debt to plaintiff is unaffected by defendant’s discharge.
Other courts have interpreted section 524 (e) to permit a plaintiff who has brought an action in tort to continue it after the defendant’s discharge or reorganization in order to show defendant’s liability and recover from such defendant’s liability insurer. (In re Jet Fla. Sys., 883 F2d 970 [11th Cir 1989] [defamation]; In re Catania, 94 Bankr 250 [Bankr D Mass 1989] [automobile accident]; In re White, 73 Bankr 983 [Bankr *41 DC 1987] ["slip and fall”]; see also, 3 Collier, Bankruptcy ¶ 524.01 [3], at 524-16 [15th ed 1990].) The White court noted that disallowing an action against a defendant under such circumstances would provide a windfall to the insurer, which had received premiums to provide such insurance, and would deprive personal injury claimants of the benefits of the insurance proceeds. (73 Bankr, at 985.)
Statutory grounds for the continuation of plaintiff’s action are also found in New York’s Insurance Law, which explicitly condones direct recovery from a liability insurer in the event of the insured’s bankruptcy. Section 3420 (a) (1) states that all policies issued or delivered in the State shall contain a provision that the insured’s insolvency shall not release the insurer from paying damages for injury; section 3420 (a) (2) provides a mechanism for collection whereby an unsatisfied judgment against the insured forms the basis for a direct action against the insurer.
Three related concerns will be addressed here. The first, raised by defendant, is that the aggregate liability claims against defendant might exceed his insurance policy coverage. Defendant claims ignorance as to whether other lawsuits against defendant affect the policy, and on that basis argues that this case not be allowed to proceed.[4]
However, here the possibility of competing claims exceeding the insurance proceeds is remote. It is undisputed that the policy is adequate to cover this claim. With respect to other extant claims, defendant is in the best position to know whether any exist. It is highly improbable that any future claim will be filed relating to the same insurance proceeds plaintiff seeks, because plaintiff’s cause of action arose in 1983, and his suit was commenced in 1986; any competing liability action is almost certainly time barred by now.
Second, the court notes that plaintiff filed no notice of claim in defendant’s bankruptcy proceeding, a circumstance found to bar the continuation of certain tort plaintiffs’ cases in In re White Motor Credit (761 F2d 270, 274-275). However, the court declines to follow the holding of White Motor as to this issue, in accordance with Jet Fla. Sys.’s persuasive criticism of the *42 holding as contrary to "the plain language of section 524 [of the Bankruptcy Code] and * * * a relevant line of cases”. (883 F2d, supra, at 974; accord, Matter of Fernstrom Stor. & Van Co., 938 F2d 731, 733-734 [7th Cir 1991]).
Finally, the court notes that, as a condition to allowing plaintiff to continue his action against the bankrupt, the Catania court required that such plaintiff agree to pay the debtor’s reasonable costs of defense, if no third party had agreed to fund those costs. (94 Bankr, at 253.) Courts have followed this reasoning, but it has been noted that "the practical and economic realities compel the insurance company to defend the underlying action [against a bankrupt debtor].” (In re Jet Fla. Sys., supra, 883 F2d, at 976 [emphasis in original].)[5]
For the reasons stated above, the court shall not disturb the Prior Order’s denial of defendant’s motion to dismiss. Plaintiff may continue his suit against defendant for the purpose of determining his liability as a basis for seeking recovery from MLMIC.
PLAINTIFF’S CROSS MOTION
Plaintiff’s cross motions to strike defendant’s answer and for sanctions are denied inasmuch as a legitimate legal issue was raised which operated to stay these proceedings. Parties are directed to appear in court on January 29, 1992 to establish a new timetable for discovery.
In sum, the motion to dismiss and the cross motions are denied.

. Case No. LA-88-10714GM.

. The enforceability, consequence and even (with respect to the Signed Order) the authenticity of the Stay Modification and the Signed Order are discussed at length in the papers. Suffice it to say here that the Stay Modification was never enforceable, because it was not ordered by Judge Mund after notice to interested parties and a hearing, as required by 11 USC § 362 (d), the provision of the Bankruptcy Code governing stay modification. Moreover, the Signed Order is of no legal consequence because, by the time of its alleged execution on September 13, 1991, the automatic stay had been replaced by the statutory injunction resulting from defendant’s discharge. (See, 11 USC § 362 [c] [2] [C]; § 524 [a] [2].) However, these documents’ invalidity is not dispositive of the motion at hand, because plaintiff may continue his suit regardless. (See, 40-41, infra.)

. Pursuant to 11 USC § 524 (a) (2) and the discharge.

. If the aggregate claims exceeded defendant’s coverage, it would be necessary to liquidate all such claims before any insurance money was paid out, since the bankruptcy estate includes defendant’s interest in the policy, the proceeds of which are subject to the same distribution procedures among claimants as any other estate assets. (See, In re White Motor Credit, 761 F2d 270, 274 [6th Cir 1985].)

. In this case, it is likely that MLMIC is contractually obligated to conduct and pay for the cost of representing defendant. If this does not turn out to be the case, however, plaintiff should understand that he might have to pay for the costs of defense if he wishes to continue his suit.